UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JOHNNIE L. BATTLES,

    Plaintiff,

v.                                                Case No.  3:14cv521/MCR/CJK

PAULA FOSKEY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

This prisoner civil rights case, filed under 42 U.S.C. § 1983, is before the court upon defendant Paula Foskey's motion for summary judgment and evidentiary materials.  (Doc. 28; *see also* Doc. 36 (providing clearer images of eight documents)).  Plaintiff has responded in opposition with evidentiary materials. (Doc. 30).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C).  After careful consideration, the undersigned concludes that that there is no genuine dispute as to any material fact and that defendant Foskey is entitled to judgment as a matter of law.

BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is an inmate of the Florida penal system currently confined at Walton Correctional Institution (Walton CI). Plaintiff initiated this action on September 30, 2014, by filing a complaint asserting medical deliberate indifference claims against several defendants. (Doc. 1). On April 20, 2015, plaintiff filed a third amended complaint naming six defendants: Michael D. Crews, former Secretary of the Florida Department of Corrections (FDC); William Whitehurst, Warden of Walton CI; Woodrow Myers, M.D., Chief Executive Officer of Corizon Health; Dr. Asencio, a physician at Walton CI; Paula Foskey, Health Services Administrator at Walton CI; and Jeannie Carter, a nurse at Walton CI. (Doc. 13). Plaintiff claimed the defendants violated his Eighth Amendment rights when they denied him surgery to remove keloid growths from his face, chest and back.

On May 12, 2015, the undersigned recommended dismissal of all defendants named in plaintiff's third amended complaint, except Paula Foskey. (Doc. 14). The Report and Recommendation noted that plaintiff alleged that Foskey, as Health Services Administrator, <u>communicated</u> the decision to deny him surgery, but that plaintiff's allegations did not raise a reasonable inference that Foskey <u>made</u> this decision. (*Id.* at 9). The undersigned nonetheless recommended that Foskey remain as a defendant so that plaintiff could conduct discovery to determine the identities

*Case No. 3:14cv521/MCR/CJK*

of the medical providers responsible for determining the course of his medical care, including the decision to deny surgery. (*Id.* at 10).[1] On November 5, 2015, the District Judge adopted the Report and Recommendation, dismissed plaintiff's claims against defendants Crews, Whitehurst, Myers, Asencio and Carter, and remanded the case to the undersigned for further proceedings. (Doc. 15).

On January 5, 2016, plaintiff was ordered to file a fourth amended complaint limited to the single claim surviving dismissal. (Doc. 19). Plaintiff was reminded of the court's previous admonition that he review his medical records to determine the identities of the medical persons responsible for denying him surgery or other appropriate care. (*Id.* at 4). The court cited the FDC rule providing inmates access to their own medical records, and quoted the procedure for plaintiff to utilize: "An inmate desiring access to his or her own medical file or Reception Medical Center hospital file shall submit a written request using Form DC6-236, Inmate Request, to the health services administrator or his or her designee." (Doc. 19 at 4 (*quoting* Fla. Admin. Code r. 33-401.710(3)(a))). The undersigned directed plaintiff:

> Plaintiff's fourth amended complaint should name as defendant(s) only the medical person(s) responsible for denying him surgery or other appropriate care for his keloids. Plaintiff's fourth amended complaint

---

[1] The undersigned recommended that plaintiff be provided this opportunity despite the fact that the court previously directed plaintiff, in an amend order (doc. 7), to review his medical records to determine the identity of the medical personnel responsible for the medical decisions of which he complained, and plaintiff had apparently not done so. (Doc. 14 at 9).

Case No. 3:14cv521/MCR/CJK

>should not name Paula Foskey as a defendant, unless plaintiff explains with specificity in his fourth amended complaint the efforts he made to identify the names of the appropriate medical defendant(s), and the result of those efforts.

(*Id.*). Plaintiff filed a fourth amended complaint again naming Paula Foskey as the sole defendant. (Doc. 20). Plaintiff alleges Foskey was the person responsible for determining whether he would receive specialized treatment outside the prison, and that she denied surgery for his keloids in violation of the Eighth Amendment. (Doc. 20, V. ¶¶ 1, 6). Plaintiff does not identify any efforts he took to determine or confirm the identities of the medical providers responsible for his care. As relief, plaintiff seeks the following: "Order the Florida Department of Corrections to provide Plaintiff with the adequate, proper, and continued medical treatment as his condition requires by the valid treatment perscribed [sic] by a competent nuetral [sic] Doctor." (*Id.* at 7).

On April 18, 2016, the court's Scheduling and Case Management Order was entered, which directed that all discovery be concluded by July 18, 2016, and summary judgment motions filed by August 8, 2016. (Doc. 27). Plaintiff conducted no discovery during the prescribed period. (*See* Doc. 31; Doc. 33 at 3). Defendant Foskey filed her motion for summary judgment on August 1, 2016. (Doc. 28). Foskey moves for summary judgment on the ground that the undisputed evidence

establishes that she has (and had) no power to grant plaintiff's requests for surgery, was not involved in treatment decisions, did not interfere with decisions concerning treatment, and cannot provide the relief plaintiff seeks. (*Id.*). Plaintiff argues in response that Foskey "is guilty of deliberate indifference to Plaintiff's serious medical needs" and that there are material facts in dispute, namely, whether Foskey "had the 'ultimate decision' at the institution[al] level to reccomend [sic] surgery or not." (Doc. 30 at 2-3). Plaintiff's response also takes issue with the court's decision to deny his earlier request for appointment of counsel, stating:

> That's the problem with America right now. If Plaintiff was in Africa, or in a Muslim country, everyone would be running to spend millions of dollars to give him medical treatment, or to insure he was getting medical care. But when it comes to our own people the political correct attitude is the hell with our people.

(Doc. 30 at 5).

## FACTS

The following facts are drawn from the evidence in the summary judgment record (docs. 28, 30), and from those allegations of plaintiff's verified fourth amended complaint (doc. 20) that may be considered on summary judgment.[2]

---

[2] "A *pro se* plaintiff's complaint, . . . if verified under 28 U.S.C. § 1746, is equivalent to an affidavit, and thus may be viewed as evidence. Nevertheless, '[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge.'" *Howard v. Memnon*, 572 F. App'x 692, 694 (11th Cir. 2014) (*citing Murrell v. Bennett*, 615 F.2d 306, 310 n.5 (5th Cir. 1980), *and quoting* Fed. R. Civ. P. 56(c)(4)) (footnote omitted). Conclusory statements are inadmissible

Case No. 3:14cv521/MCR/CJK

Where the parties offer conflicting accounts of the events in question, the court "sets forth the facts, drawn from the evidence presented, in the light most favorable to the plaintiff." *See Snow ex rel. Snow v. City of Citronelle*, 420 F.3d 1262, 1265 (11th Cir. 2005).

Defendant Foskey serves as the Health Services Administrator (HSA) at Walton CI. (Doc. 28, Foskey Aff. ¶ 2). Foskey is a registered nurse, has been employed at Walton CI since November 11, 2011, and has served as the HSA since June of 2013. (*Id.* ¶¶ 1, 2). Foskey does not now have, nor has she ever had, the authority or power to order or approve surgery for plaintiff's keloids. (*Id.* ¶ 3). Surgery for plaintiff's keloids requires approval through the Utilization Management (UM) process. (*Id.*). UM approval has been required for surgery for plaintiff's keloids at all times during Foskey's tenure as the HSA at Walton CI. (*Id.*). The UM process is initiated when a "medical provider" (doctor or mid-level provider, such as a nurse practitioner) submits a UM request form. (*Id.* ¶ 4). Nurses are not authorized to initiate UM requests for specialized services. (*Id.*). The UM request form provides information concerning the requested service, the medical condition,

---

because they are not based on personal knowledge. *Lloyd v. Card*, 283 F. App'x 696, 701 (11th Cir. 2008) (*citing Marshall v. City of Cape Coral, Fla.*, 797 F.2d 1555, 1559 (11th Cir. 1986) ("inferences based upon speculation are not reasonable")).

and other pertinent information. (*Id.*). The UM request is then evaluated through the UM process. (*Id.*). The medical provider who requested the specialized service does not participate in the UM evaluation. (*Id.*). Physicians in higher administrative positions evaluate the request and decide whether the requested service is approved. (*Id.*). If the medical provider who requested the specialized service disagrees with the UM decision, the medical provider may initiate steps for further review and consideration. (*Id.*). Foskey has never been involved in the UM decision-making process, and was not involved in the UM decision-making process for any request for plaintiff to receive specialized services, including surgery for his keloids. (*Id.* ¶ 5). Foskey's only involvement in the UM process is in an administrative role. (*Id.*). These administrative duties are a part of Foskey's responsibilities as the HSA, and include facilitating the submission of the UM request forms for consideration by the persons who will make the UM decision. (*Id.*). When requested, Foskey coordinates the retrieval of supporting documents, such as laboratory results and/or medical provider progress notes, which are attached to the UM request form. (*Id.*). When a UM decision is made, Foskey coordinates communication of the decision to the provider who requested the specialized service so that the provider can discuss the decision and related matters with the patient. (*Id.*). Foskey's involvement in any UM request for specialized services for plaintiff was limited to this administrative

role.  (*Id.*).  Foskey was not involved in the decisions made by the medical providers at Walton CI concerning the medical treatment for plaintiff.  (*Id.* ¶ 6).  Treatment decisions for patients at Walton CI are made by the medical providers.  (*Id.*).  Nurses are not authorized to make treatment decisions or prescribe treatment, except with respect to minor conditions.  (*Id.*).  The nurses at Walton CI did not have the authority to order treatment for plaintiff's keloids, other than to provide topical treatments and/or over-the-counter medications, such as Ibuprofen.  (*Id.*).  Foskey never caused or tried to cause any proposed treatment or evaluation of plaintiff's keloids to not be provided.  (*Id.*).

Foskey has submitted medical and business records relating to requests for specialized services for plaintiff's keloids.  (Doc. 28, Foskey Ex. A).  The records reflect that plaintiff's keloid condition has been ongoing for years.  Plaintiff reported having keloids since 1995, and of having multiple surgical procedures.  (*Id.*, Ex. A at 0015-0016 (clearer image at Doc. 36, Foskey Ex. A at 0015-0016)).  On November 18, 2010, following plaintiff's incarceration, surgery was performed on the keloids on plaintiff's face.  (Doc. 28, Foskey Ex. A at 0021).  Following the 2010 surgery, and when the FDC was still providing direct medical care, surgery for plaintiff's keloids was denied on multiple occasions.  Specifically, in March 2011, a request to perform surgery on the keloids on plaintiff's chest and back was denied.

(*Id.* at 0019).  In January 2013, a request for surgery for the keloids on plaintiff's face, which were growing back after the 2010 surgery, was denied through the FDC's UM process.  (*Id.* at 0001, 0018 (clearer image at Doc. 36, Foskey Ex. A at 0018)).  On August 26, 2013, plaintiff was seen by a dermatologist who noted that surgical options were limited for plaintiff's keloids, but they would get the new provider (Corizon) to take a second look.  (Doc. 28, Foskey Ex. A at 0014 (clearer image at Doc. 36, Foskey Ex. A at 0014)).  From September 15, 2013, until May 22, 2016, Corizon was the medical provider at Walton CI.  During Corizon's tenure, requests for surgery for plaintiff's keloids were submitted, but were not approved through the UM process.  (*Id.* Doc. 28, Foskey Ex. A at 0002-0005, 0011-0013 (clearer images of 0004, 0005 and 0012 at Doc. 36)).  Several doctors were involved in the UM process.  (*Id.*).  These doctors made the decision not to approve surgery for reasons including:  (1) plaintiff's keloids had recurred following previous surgery; (2) there is a high incidence of recurrence after surgery; (3) there is a substantial risk surgery may cause the keloids to worsen; and (4) surgery for keloids is considered cosmetic.  (*Id.*).  Foskey was not involved in making the decision concerning surgery.  (*Id*. and Doc. 28, Foskey Aff. ¶ 5).

As Health Services Administrator, Foskey's administrative duties also require her to be involved in providing a response to an inmate's request form and/or

grievance. (Doc. 28, Foskey Aff. ¶ 10). Foskey reviews the request or grievance to determine the nature of the medical issue. (*Id.*). Foskey then reviews the medical records and/or speaks to a medical provider in order to provide an accurate response to the inmate's concern. (*Id.*). Foskey directly responds to Inmate Request forms and Informal Grievances, and assists the site medical director and/or warden in responding to Formal Grievances. (*Id.*). With respect to plaintiff's inquiries concerning his keloids, Foskey reviewed the written decision made by the UM reviewers. (*Id.*). Foskey also spoke to several of the doctors concerning this issue. (*Id.*). Foskey provided accurate information to plaintiff's inquiries concerning the status of his condition and treatment. (Doc. 28, Foskey Ex. 0006-0009, 0022-0034).

Plaintiff has not submitted any medical evidence in response to Foskey's motion for summary judgment. (Doc. 30). Plaintiff submitted his own affidavit which states, relative to Foskey's involvement in his medical care: "I have made numerous requests to the medical department to have these growths removed, but the medical staff, Defendant Foskey primarily have refused, claiming removal was unnecessary." (Doc. 30, Battles Aff. at 5 in ECF). To support his allegation that Foskey was involved in the decision to deny him surgery, plaintiff attaches copies of grievances he filed in 2013 and 2014.

Plaintiff's grievances confirm what Foskey's affidavit and attached medical records show – that although it was Foskey who communicated to plaintiff the decisions of medical providers, it was not Foskey who made the decisions concerning plaintiff's medical care, including the decision to deny him surgery. (Doc. 30, Ex.). In April 2013, <u>prior to Foskey becoming the HSA at Walton</u>, plaintiff filed an inmate request seeking surgery to remove his keloids. (Doc. 30, Ex., p. 2 in ECF). A different HSA, L. White, responded: A request for surgery for removal of keloids was submitted to Utilization Management (UM) by this office. UM denied the surgery. You have a follow-up appt soon to evaluate the keloids. PA Chowdhury will advise if the surgery request can be resubmitted again." (*Id*.). Dissatisfied with the response, plaintiff filed a formal grievance. (*Id*., p. 5 in ECF). Dr. Rummel and Assistant Warden Hodge responded on April 10, 2013:

> Your medical file has been reviewed. You were last evaluated by PA Chowdhury regarding keloids on 12/27/12. As a result of the examination, a request was forwarded to Utilization Management (UM) to have the keloids removed surgically. UM denied this request. A follow up examination by PA Chowdhury is scheduled soon. PA Chowdhury will determine if the request for surgery should be submitted to UM again. In the meantime if you continue to have problems with this issue you should request sick call.

(*Id*.).

Plaintiff submitted another formal grievance, to which Rummel and Hodge responded on April 26, 2013:

> Your medical file has been reviewed. You were last evaluated by PA Chowdhury regarding keloids on 04/10/13. As a result of the examination, strong antibiotics were prescribed for you. PA Chowdhury or the physician will see you in a month to determine the next step to be taken in the healing process of the keloids. In the meantime if you continue to have problems with this issue, you should request sick call.

(*Id.*, p. 8 in ECF). After seeking further administrative review, plaintiff submitted an inmate request on December 23, 2013, seeking to know the status of being re-evaluated for surgery. (*Id.*, p. 15 in ECF). Defendant Foskey responded: "Your consult was not approved at this time." (*Id.*). Plaintiff submitted a second inmate request seeking to know the status of being re-evaluated. (*Id.*, p. 18 in ECF). Defendant Foskey responded on February 3, 2014: "It has been decided that surgery is not prudent since the keloids are recurrent. Surgery poses more risk to your health than the keloids." (*Id.*). In April of 2014, plaintiff submitted another grievance, seeking the status of a referral for surgery submitted by Doctor Vilchez. Foskey responded on April 8, 2014: "Surgery is still not recommended." (*Id.*, p. 26 in ECF). In response to plaintiff's additional grievance, Foskey responded on April 11, 2014:

> The decision to remove keloids surgically is reviewed by the Utilization Management team after being submitted by Dr. Vilchez. As explained before, the decision to not do surgery is based on the

>likelihood that the keloids will return as they have in the past. Although they are a discomfort, Corizon considers them cosmetic and non-life threatening.

(*Id.* at 27 in ECF). Plaintiff submitted a grievance inquiring into who, in particular, made the decision to deny him surgery, to which defendant Foskey responded on April 15, 2014:

>Dr. G. Amatucci was the physician responsible for reviewing the request for surgery consult. On 3/24/14, he documented, "Cosmetic issue with a very high incidence of recurrence and worsening after surgery. Do not recommend surgery." Surgery is risky anytime you are placed under anesthesia.

(*Id.* at 28 in ECF; *see also* Doc. 28, Foskey Ex. A at 0011). Plaintiff submitted a formal grievance, to which Dr. Denis Vilchez responded: "Dr. G. Amatucci and Dr. J. Shubert are the doctors that review consult requests in our region and have recommended alternative treatment plans for your condition instead of surgery. Some of the risks associated with surgery include death, cardiac arrest, respiratory arrest, stroke, etc. There are no life threatening risks from keloids. A mental health referral is being made in reference to the mental anguish that you described." (Doc. 30, Ex. at 32 in ECF). Plaintiff subsequently submitted an informal grievance seeking the full names of the doctors who made the decision to deny him surgery, to which defendant Foskey responded on May 12, 2014: "Dr. Joseph Shubert [and]

Dr. Gerald Amatucci." (*Id.* at 31 in ECF; *see also* Doc. 28, Foskey Ex. A at 0011). The foregoing grievances are the extent of plaintiff's evidence.

## DISCUSSION

<u>Legal Standards</u>

    A.    Summary Judgment Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 160 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ("[T]he plain language of Rule 56(a) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). In applying this standard, the court must view the facts in the light most favorable to the non-moving party (here, the plaintiff) and draw all reasonable inferences in favor of that party. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.

Ed. 2d 202 (1986).  An issue of fact is "material" if it might affect the outcome of the case under the governing law.  *Id.*  An issue is "genuine" if the record taken as a whole could lead a rational fact finder to find for the non-moving party.  *Id.*  "[T]he nonmoving party cannot create a genuine issue of material fact through speculation, conjecture, or evidence that is 'merely colorable' or 'not significantly probative.'"  *Vega v. Invsco Group, Ltd.*, 432 F. App'x 867, 869-70 (11th Cir. 2011).  Summary judgment is not appropriate "if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact."  *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir. 1995).

    B.    Eighth Amendment Standard

A prisoner claiming he was deprived of medical care in violation of the Eighth Amendment must show "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury."  *Danley v. Allen*, 540 F.3d 1298, 1310 (11th Cir. 2008).  A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (*citing Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1186 (11th Cir. 1994),

*overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002)); *see also Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (holding that a serious medical need is one that, if left unattended, "pos[es] a substantial risk of serious harm.").

Deliberate indifference has three components: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Farrow*, 320 F.3d at 1245 (quotations omitted). This means that the official must have been actually aware of the risk of harm: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

The final element, causation, requires that the prisoner establish a causal connection between the constitutional violation and the defendant's conduct. *See Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986) (citation omitted) (requiring "proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation"). Such a causal connection may be established by showing that the state actor was personally involved in the acts that resulted in the violation of the constitutional right. *Id.*

Application of Summary Judgment Standard to Plaintiff's Claim against Foskey

Plaintiff's theory of liability against defendant Foskey is that she personally participated in the decision to deny him surgery for his keloids. Viewing the summary judgment evidence in the light most favorable to him, plaintiff has not created a triable issue of material fact concerning whether Foskey was involved in the decision-making process. In response to defendant Foskey's affidavit and evidentiary materials showing that Foskey did not make the decision to refuse plaintiff surgery and that she merely communicated the UM team's decision to plaintiff, plaintiff states in his affidavit that it was Foskey who made the decision to deny him surgery. But plaintiff's documentary evidence does not bear that out, and in fact shows otherwise. "For factual issues to be considered genuine, they must have a real basis in the record." *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) (citations omitted). "[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (*citing Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Plaintiff's summary judgment materials do not reasonably support a finding, or even an inference, that Foskey was the medical official who made the decision to deny him surgery or other appropriate care for his keloids.

As the undisputed facts establish that Foskey did not personally participate in the decision to deny plaintiff surgery, plaintiff cannot establish the required elements – deliberate indifference or causation – to prevail on his Eighth Amendment claim. Defendant Foskey is entitled to judgment as a matter of law.

To address plaintiff's suggestions that he was impeded in this lawsuit by the denial of his requests for extended discovery and the appointment of counsel (docs. 30, 31), the undersigned notes that plaintiff's own summary judgment materials (Foskey's May 12, 2014 response to plaintiff's inmate request), establish that <u>prior to filing this lawsuit</u>, plaintiff was aware of the names of the doctors who refused him surgery and knew that it was not defendant Foskey who made that decision. Plaintiff did not require an extended discovery period or appointed counsel to ascertain the proper defendants – he already knew that information. Throughout plaintiff's five complaints and during the two years this case has been pending, plaintiff did not name either of the doctor's responsible for the 2013 and 2014 decisions to deny him surgery, despite being aware of their identities. (*See* Docs. 1, 5, 11, 13, 20). In light of plaintiff's repeated opportunities to amend and repeated failure to name the proper defendants responsible for the medical decision at issue in this litigation, this court should grant summary judgment in favor of defendant Foskey, enter judgment in favor of the five other defendants pursuant to the

November 15, 2015 order of dismissal, and close this case without further opportunity to amend.

Accordingly, it is respectfully RECOMMENDED:

1. That defendant Foskey's motion for summary judgment (doc. 28) be GRANTED, and that judgment in her favor be entered accordingly.

2. That judgment dismissing plaintiff's claims against defendants Crews, Whitehurst, Myers, Asencio and Carter be entered according to the court's November 15, 2015 Order (doc. 15).

3. That the clerk be directed to close the file.

At Pensacola, Florida this 28th day of November, 2016.

*/s/ Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.